IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA NICKERSON,<br><br>             Petitioner,<br><br>     vs.<br><br>DAVE DAVEY, Acting Warden, California<br>State Prison-Corcoran,[1]<br><br>           Respondent. | No. 2:13-cv-00214-JKS<br><br>MEMORANDUM DECISION |

Joshua Nickerson, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Nickerson is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at California State Prison-Corcoran. Respondent has answered, and Nickerson has not replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On January 30, 2009, Nickerson, along with Matthew Jones and Cassel Meadors, was charged with one count of attempted murder. The information alleged that all three individuals committed the offense for the benefit of the Crips street gang. It further alleged that Meadors personally discharged a firearm and that all three were principals in the offense, at least one of whom used a firearm. Nickerson and Jones each were additionally charged with two counts of attempting to dissuade a witness. As to those crimes, the information alleged that Nickerson and Jones committed the crimes by force or an express or implied threat of force or violence and for the benefit of a street gang.

---

[1]     Dave Davey, Acting Warden, California State Prison-Corcoran, is substituted for F. Foulk, Acting Warden, High Desert State Prison. FED. R. CIV. P. 25(c).

On direct appeal of his conviction, the California Court of Appeal recounted the

following facts underlying Nickerson's indictment:

>     The attempted murder occurred on July 25, 2008, at an apartment complex in the northern part of Sacramento, an area "infested with Crips" that had become "hot" for gang-related crimes.  At the time, [Nickerson and Jones] were living in the apartment complex and were members of the Crips gang.
>
>     Also living in the apartment complex at the time was Alisha S.  Alisha, her sister, Ieisha S., their children, and Alisha's boyfriend, Mauryea A. shared an apartment.  Alisha was friends with [Nickerson and Jones].
>
>     On the night of July 25, 2008, Alisha, Mauryea, and two of Alisha's friends, Felicia T. and Melissa B., were at Alisha's apartment.  A little before 10:00 p.m., they heard a knock at the door and Alisha answered it.  Outside were [Nickerson and Jones] and a third individual, Cassell Meadors, who was also a Crips member.  [Nickerson and Jones] entered the apartment, but Meadors remained outside.  Nickerson walked into the kitchen and Jones stayed in the living room area with Mauryea.
>
>     While conversing with Jones, Mauryea said something about "cuz" or "blood," and that upset Jones.  An argument ensued between them.  Alisha later reported to police that Mauryea said something like, "Blood, can you get out of my girlfriend's house? She gets an attitude every time you come over here, and she takes that out on everybody when you come over here."  According to the prosecution's gang expert, calling a Crip gang member a Blood is considered a challenge.  Mauryea reported to police that [Nickerson and Jones] had been talking about "guns and things" and he thought this was disrespectful to the house.  He told them so and that he wanted them to leave.
>
>     Meadors entered the apartment, got in Mauryea's face and started yelling at him.  Meadors said, "Don't talk to my motherfucking brother like that."  Alisha yelled to them from the kitchen to take their argument outside.  Nickerson emerged from the kitchen and the four men walked outside the apartment.  Alisha closed and locked the door behind them.
>
>     When Mauryea walked outside, he found the other three standing in a semi-circle facing him.  [Nickerson and Jones] were "posturing like they [had] guns."  They continued to argue with Mauryea.  At one point, Alisha stepped outside and tried to get Mauryea to come back inside, but he refused.  Meadors told Mauryea he was going to shoot him and was making hand signs.  Although Mauryea was not being aggressive toward the other three, he also refused to be intimidated by them.  Mauryea heard someone say that they were the "Trigga Mob."  Meadors said to Mauryea he would "bust [him] out right now" and would "shoot this whole house up."  Meadors also brandished a handgun.  When he saw the gun, Mauryea asked, "Are you going to shoot me?"
>
>     At some point during all of this, Mauryea apologized and offered to shake hands with Jones and "squash it."  Jones responded that, "We're cool," but he refused to shake Mauryea's hand.

Mauryea eventually walked past the other three and, when he turned back toward them, found Jones "dead in [his] face." Mauryea saw that Jones held one hand behind the back of his leg. Jones made an overhand motion with that arm and struck Mauryea in the eye with what Mauryea believed to be the butt of a gun. Mauryea immediately lost sight in that eye.

Mauryea grabbed Jones and the two wrestled around. Mauryea got Jones in a headlock. Nickerson and Meadors shouted encouragement to Jones and assisted him by hitting Mauryea in the back and the back of the head. As they wrestled, Mauryea could see a gun being handed off from one to another of the assailants. Mauryea then heard a shot and felt a burn on his shoulder.

Mauryea immediately released his hold on Jones and fell down on "all fours." He heard Nickerson say something to him like, "I told you," and then saw the three walk away together. He also saw one of them pass a gun to Nickerson.

Mauryea struggled to his feet and returned to the apartment, where he told the others he had been shot.

Mauryea was taken to the hospital and examined. He had injuries to his eye, the back of his head, and his shoulder. There were multiple fractures to the orbit around his eye and he suffered vision loss due to damage to the optic nerve. There were scratch marks on his shoulder and two penetrating wounds consistent with gunshots. X-rays also revealed metallic fragments near the shoulder blade, which were not removed by medical personnel.

[Nickerson, Jones,] and Meadors were later arrested. On August 6, 2008, Ieisha received a call on her cell phone while she was walking her daughter to school. The caller identified himself as John John, but she recognized the voice as that of Jones. Jones said, "My boy's in jail. You guys got him in trouble. Come outside." He also said, "[H]i bitch. Nigga, my homeboy's in jail and you guys are snitches." He also said, "I'm gonna shoot your fucking house. I'm in front your [sic] apartment. Come out now." Ieisha immediately reported this to the police.

That same day, Alisha called the police and reported she had received a threatening call from Nickerson on August 4. Alisha reported that Nickerson said to her, "You're going to get it. I'm 29th Street, Cuz. You're gonna get it. You better watch your backs." Alisha also heard from "this dude named Sean" that "the word on the street was that these guys, if [she] snitched, were going to kidnap and torture [her] kids." Alisha also heard on the street that [Nickerson and Jones] thought she had been identifying them as the perpetrators. She told police in a later interview that she was told if she snitched something would happen to her children and "they" were going to shoot up her house. Alisha later visited Nickerson in jail to tell him she was not snitching on him.

*People v. Jones*, No. C062720, 2012 WL 2826805, at *1-2 (Cal. Ct. App. July 11, 2012).

Trial began on May 28, 2009.  On June 1, 2009, Meadors' motion to sever was granted and the trial court ordered that Meadors' case be tried before one jury and that Nickerson and Jones be tried before a second jury.  Upon conclusion of trial, the jury convicted Nickerson of all counts and found the enhancement allegations to be true.[2]

On August 14, 2009, the trial court sentenced Nickerson to a determinate imprisonment term of 5 years, the low term, on the attempted murder charge.  The court also sentenced Nickerson to indeterminate terms of 25 years to life for the firearm enhancement on the attempted murder charge and a consecutive sentence of life with a minimum parole eligibility of 7 years on one of the attempting to dissuade a witness charges.  The other attempting to dissuade a witness charge was stayed pursuant to California Penal Code § 654.

Through counsel, Nickerson appealed his conviction, arguing that: 1) there was insufficient evidence to sustain his conviction for attempted murder; 2) the trial court erred in instructing the jury as to the firearm enhancement; and 3) trial counsel was ineffective for failing to object to the firearm enhancement instruction.  Nickerson also joined in the arguments raised by Jones on direct appeal.  The Court of Appeal corrected an error in Nickerson's abstract of judgment but otherwise affirmed Nickerson's conviction in a reasoned, unpublished opinion. *Jones*, 2012 WL 2826805, at *17.  Nickerson then petitioned for review to the California Supreme Court, again alleging that insufficient evidence supported the attempted murder

---

[2]     Meadors' jury likewise convicted him of attempted murder and found true allegations that he committed the crime for the benefit of a criminal street gang, he intentionally and personally used a firearm, and as a principal intentionally and personally discharged a firearm causing great bodily injury.  *People v. Meadors*, No. C063060, 2011 WL 2447338, at *1 (Cal. Ct. App. June 20, 2011).

conviction and that the trial court erred in its firearm enhancement instruction.  The California

Supreme Court denied the petition without comment on October 10, 2012.

Nickerson timely filed a Petition for a Writ of Habeas Corpus to this Court on September

5, 2013.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Nickerson raises the same arguments that he

presented to the state courts on direct appeal.  First, he argues that there was insufficient

evidence to support his attempted murder conviction.  He additionally argues that his trial

counsel was ineffective for failing to object to the instructions given to the jury on the firearm

enhancement.  Finally, he contends that the trial court erred in its instructions to the jury on the

firearm enhancement.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to,

or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding,"

§ 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule

that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts

that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless

arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Nickerson has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *See Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971).

6

IV. DISCUSSION

A.      Exhaustion

        This Court may not consider claims that have not been fairly presented to the state

courts.  28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).  To

be deemed exhausted, a claim must have been presented to the highest state court that may

consider the issue presented.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To have

properly exhausted his state court remedies, Nickerson must have presented both the legal

arguments and the factual basis to the highest state court.  *See Peterson v. Lampert*, 319 F.3d

1153, 1155-56 (9th Cir. 2003).  As Respondent correctly notes, although Nickerson raised his

ineffective assistance of counsel claim on direct appeal to the California Court of Appeal, he

failed to present the claim to the California Supreme Court in his petition for review.

Accordingly, Nickerson has failed to exhaust this claim

        Unexhausted claims must be dismissed.  *See Rhines v. Weber*, 544 U.S. 269, 275-78

(2005).  However, this Court need not rely on this basis as it may deny the petition on the merits

notwithstanding the lack of exhaustion of state court remedies.  28 U.S.C. § 2254(b)(2) ("An

application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure

of the applicant to exhaust the remedies available in the courts of the State.").  Accordingly, this

Court declines to dismiss the unexhausted claim solely on exhaustion grounds and will instead

reach the merits of the claim as discussed below.

B.      Merits

        Sufficiency of the Evidence (Claim 1)

Nickerson first argues that there was insufficient evidence to support the attempted murder conviction.  The Court of Appeal rejected this claim on direct appeal, concluding that "[t]he evidence showed that, during a scuffle in which things were happening fast and the parties were moving around, Meadors took a shot in the direction of Mauryea's back from close range. On this evidence alone, a reasonable jury could conclude Meadors intended to kill Mauryea with that shot."  *Jones*, 2012 WL 2826805, at *4.

As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see also McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the California court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.  *Jackson*, 443 U.S. at 318-19.  Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."  *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.  *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

8

Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. This Court must also be ever mindful of the deference owed to the trier of fact and the sharply limited nature of constitutional sufficiency review. *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005). A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

Under California law, murder is the unlawful killing of a human being with malice aforethought. CAL. PENAL CODE § 187(a). To prove attempted murder, it must be established that an individual took at least one direct but ineffective step toward killing a person and he intended to kill that person. CAL. PENAL CODE §§ 664, 187(a). Although motive is not an element of the crime of attempted murder, evidence of motive is often probative of intent to kill. *People v. Smith*, 124 P.3d 730, 741 (Cal. 2005). Additionally, aside from motive, intent to kill may be inferred from a perpetrator's acts and the circumstances of the crime. *Id.* In particular, the act of purposefully firing a gun at another at close range gives rise to an inference of intent to kill, regardless if there is any showing of a particular motive to kill the victim. *Id.* at 742.

In this case, the prosecution proceeded on the theory that Meadors was the actual shooter and that Nickerson and Jones aided and abetted Meadors. Under California law, a person who either directly commits or aids and abets an offense is guilty as a principal. *See* CAL. PENAL

9

CODE § 31.  A defendant may be found guilty under an aiding and abetting theory if he: 1) acted with knowledge of the unlawful purpose of the perpetrator; 2) acted with the intent or purpose of committing, encouraging, or facilitating the commission of the offense; and 3) by act or advice, aided, promoted, encouraged or instigated the commission of the crime.  *See People v. Prettyman*, 926 P.2d 1013, 1018-19 (Cal. 1996).  An aider and abettor's presence at the scene of the crime, companionship with the perpetrator, and conduct before and after the offense are among the factors that may be considered in determining whether the aider and abettor had the requisite knowledge and intent.  *People v. Campbell*, 30 Cal. Rptr. 2d 525, 529 (Cal. Ct. App. 1994).

On direct appeal, Nickerson likewise argued that there was insufficient evidence to support a jury's finding that any of the defendants intended to kill Mauryea.  In rejecting Nickerson's claim, the California Court of Appeal's application of the *Jackson* standard was not objectively unreasonable.  When viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have inferred an intent to kill.  Facts relevant to the attempted murder conviction are as follows: During the initial part of the confrontation, Meadors, Jones, and Nickerson attempted to intimidate Mauryea by posturing as if they had guns.  The situation escalated when Meadors pulled out a gun and told Mauryea that he would "bust" him.  The situation further escalated when Jones hit Mauryea in the head with a gun and proceeded to fight him.  After Mauryea had Jones in a headlock and Meadors and Nickerson had struck Mauryea numerous times from behind, Meadors acted on his earlier threat and shot Mauryea in the back at least one time.  After Mauryea was shot, Meadors handed the gun to Nickerson, who approached the victim and said, "I tried to tell you."  Nickerson then fled with

the gun and the other suspects.  A police detective, testifying as a gang expert, testified about the

obligation that a Crip gang member would have to "back up" his fellow gang members who have

been disrespected.  A rational trier of fact viewing this evidence in the light most favorable to

the prosecution could infer that Mauryea had an intent to kill and that Nickerson had the

requisite knowledge and intent to be liable as an aider and abetter.

_____Nickerson argues that there was insufficient evidence to support his attempted murder

conviction because "[d]uring trial testimony it was heavily disputed that the victim was ever

shot" and "it was not proven that anyone took a direct step or intended to kill."  But Nickerson

misperceives the role of a federal court in a habeas proceeding challenging a state-court

conviction.  Under *Jackson*, the role of this Court is to simply determine whether there is any

evidence, if accepted as credible by the jury, sufficient to sustain conviction.  *See Schlup v.

Delo*, 513 U.S. 298, 330 (1995).  In this case, the appellate court determined that there was

sufficient evidence, based on Mauryea's testimony, that Meadors shot Mauryea in the back, that

Meadors intended to kill Mauryea with that shot, and that the actions of Nickerson and Jones

likewise evinced an intent so as to satisfy the elements of attempted murder under California

law.  *See United States v. Larios*, 640 F.2d 938, 940 (9th Cir. 1981) ("The testimony of one

witness . . . is sufficient to uphold a conviction." (citations omitted)); *see also Bruce v. Terhune*,

376 F.3d 950, 957-58 (9th Cir. 2004) (per curiam) (same).  Although it might have been possible

to draw a different inference from the evidence, this Court is required to resolve that conflict in

favor of the prosecution.  *See Jackson*, 443 U.S. at 326.  Nickerson bears the burden of

establishing by clear and convincing evidence that these factual findings were erroneous.  28

U.S.C. § 2254(e)(1).  He has failed to carry such burden.  The record does not compel the

conclusion that no rational trier of fact could have found that Nickerson was guilty of attempted

murder, especially considering the double deference owed under *Jackson* and AEDPA.

Nickerson is therefore not entitled to relief on his legal insufficiency claim.

Instructional Error (Claims 2 and 3)

Nickerson next raises two claims relating to the gun enhancement jury instruction.  In

considering this claim on direct appeal, the Court of Appeal recounted the following facts and

arguments:

> [Nickerson and Jones] contend the jury was not properly instructed on the firearm enhancement.  Mauryea received two primary injuries, one when he was struck in the eye with the butt of a gun and one when he was shot in the back.  [Nickerson and Jones] argue: "The evidence that [Mauryea] was pistol whipped was quite strong but the evidence that he was actually shot was very much in dispute."  [Nickerson and Jones] argue the instructions and verdict forms failed to require the jury to specify which of these acts caused great bodily injury.  And because the pistol whipping is only a use of the firearm not a discharge, it cannot support the 25–years–to–life enhancement.
>
> The jury was instructed pursuant to CALCRIM No. 1402 in relevant part as follows:
>
>> "If you find the defendant guilty of the crime charged in Count 1, and you find that the defendant committed that crime for the benefit of, at the direction of, or in association with a criminal street gang with intent to promote, further, assist in any criminal conduct by gang members, you must then decide whether the People have proved the additional allegation that one of the principals personally used and intentionally discharged a firearm during that crime and caused great bodily injury.  You must decide whether the People have proved that allegation and return a separate finding for each crime.
>>
>> "To prove this allegation, the People must prove that:
>>
>> "*1. Someone who was a principal in the crime personally used and discharged a firearm during the commission of the Attempted Murder*;
>>
>> "2. That person intend [sic] to discharge that firearm;
>>
>> "And
>>
>> "3. That person's act caused great bodily injury to another person who was not an accomplice to the crime.  [¶] . . . [¶]
>>
>>> "*A principal personally uses a firearm if he intentionally does any of the following:*
>>>
>>> "*1. Displays the firearm in a menacing manner;*
>>>
>>> "*2. Hits someone with the firearm;*

"*Or*

"*3. Fires the firearm.*

"Great bodily injury means significant or substantial physical injury.  It is an injury that is greater than minor or moderate harm.  [¶] . . . [¶]

"The People have the burden of proving each allegation beyond a reasonable doubt.  If the People have not met this burden, you must find that the allegation has not been proved."  (Italics added.)

In the original CALCRIM version of the instruction, the first italicized portion above reads: "[1.] Someone who was a principal in the crime personally (used/discharged) a firearm during the commission [or attempted commission] of the _____< insert appropriate crime listed in Penal Code section 12022.53(a) (./;)" (CALCRIM No. 1402.)  The Bench Notes to the instruction state: "In this instruction, the court must select the appropriate options based on whether the prosecution alleges that the principal used the firearm, intentionally discharged the firearm, and/or intentionally discharged the firearm causing great bodily injury or death."  (Bench Note to CALCRIM No. 1402, p. 1161.)

The Bench Notes also direct that the second italicized portion of the instruction given by the court, describing personal use of the firearm, should be given "only if the prosecution specifically alleges that the principal 'personally used' the firearm."  (Bench Note to CALCRIM No. 1402, p. 1161.)  However, it further instructs that the language not be included "if the prosecution alleges intentional discharge or intentional discharge causing great bodily injury or death."  (*Ibid.*)

In the present matter, the prosecution charged both use and discharge of the firearm causing great bodily injury.  The verdict forms also asked the jury to determine if [Nickerson and Jones] "used and discharged" the firearm.  The Bench Notes provide no guidance as to whether the description of personal use should be included in the instruction where the prosecution alleges both use and discharge.

*Jones*, 2012 WL 2826805, at *6-8.

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."  *Boyde v. California*, 494 U.S. 370, 380 (1990).  The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment.  *Francis v. Franklin*, 471 U.S. 307, 309 (1985).  This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000);

*Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Francis*, 471 U.S. at 323-24 & n.9 (discussing the subject in depth).

It is well established that not only must the challenged instruction be erroneous but it must violate some constitutional right, and it may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record.  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).  This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn.  *Id.* at 72-73.  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation."  *Id.*

As an initial matter, because the state appellate court found Nickerson's claim forfeited under California's contemporaneous objection rule, the claim is procedurally defaulted from federal habeas review.  *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (a federal court will not review a claim if the state court's rejection of the claim rests on a state law ground that is independent of the federal question and adequate to support the judgment).  The Ninth Circuit has repeatedly recognized and applied the California contemporaneous objection rule in affirming denial of a federal habeas petition on grounds of procedural default where there was a complete failure to object at trial.  *See, e.g.*, *Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004).  Because the state appellate court held that the claim was thereby forfeited under California's contemporaneous objection rule, Nickerson's jury instruction claim may be deemed procedurally defaulted.

14

In any event, Nickerson fails to demonstrate that he was denied a fair trial.  In making

that determination, "[t]he jury instruction may not be judged in artificial isolation, but must be

considered in the context of the instructions as a whole and the trial record."  *Estelle*, 502 U.S. at

72.  Based on the Court's review of the instructions and the trial record as a whole, this Court

agrees with the appellate court that there is no basis to conclude that there was any defect with

the jury instruction here.  As the appellate court found, CALCRIM No. 1402 unambiguously

informed the jury that it was required to find the use and discharge of the firearm occurred

during the commission of the attempted murder, and the only act alleged during the attempted

murder was the discharge of the firearm into the victim's back.  *Jones*, 2012 WL 2826805, at *9.

There is therefore no  reasonable likelihood that the instruction was applied in a way that

violated the Constitution.  *Estelle*, 502 U.S. at 72.  Nickerson is therefore not entitled to relief on

his jury instruction claim (claim 3).

Moreover, given that the instruction in this case adequately informed the jury that, in

order to find the gun enhancement true, it must find an intentional use and discharge of the

firearm during the commission of the attempted murder rather than during the assault that

preceded it, the instruction was not deficient.  Accordingly, Nickerson's corresponding claim

that trial counsel was ineffective for failing to object to the instruction (claim 2) also must fail.

*See Lockhart v. Fretwell*, 506 U.S. 364, 374 (1993) (O'Connor, J., concurring) (failing to raise a

meritless objection cannot constitute prejudice under a *Strickland* ineffective assistance of

counsel claim); *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (appellate counsel does not have

an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1434-35

(9th Cir. 1989) (appellate counsel's failure to raise a weak issue did not constitute ineffective counsel).

## V. CONCLUSION AND ORDER

Nickerson is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated:  May 30, 2014.

_____/s/James K. Singleton, Jr._____
JAMES K. SINGLETON, JR.
Senior United States District Judge